**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**GREG CUSUMANO,**

              **Plaintiff,**

-vs-                                              Case No. 6:04-cv-787-Orl-31KRS

**MAQUIPAN INTERNATIONAL, INC.**
**d/b/a Pan & Plus & ANTONIO CASTANO,**

              **Defendants.**

_____

# ORDER

In this case, the Plaintiff, Greg Cusumano ("Cusumano") has sued the Defendants, Maquipan International, Inc. ("Maquipan") and Antonio Castano ("Castano," collectively referred to with Maquipan, where appropriate, as the "Defendants") under the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.* (the "FLSA") and Florida Statute Chapter 448, asserting that he is entitled to unpaid overtime wages. This matter is before the Court on several motions for partial summary judgment, as follows: first, Cusumano's Motion for Summary Judgment on the Defendants' Fourth Affirmative Defense (Doc. 54), and the Defendants' Response thereto (Doc. 62); and, second, Cusumano's Motion for Summary Judgment on Count One (Doc. 57), and the Defendants' Response thereto (Doc. 64).

**I.     Background**

       A. The Parties

Cusumano is a resident of Orange County, Florida. He was employed by Maquipan from September of 2002 through August of 2003.

Maquipan is a Florida corporation, and is an employer as defined by 29 U.S.C. section 203(d). Castano is the owner and/or an officer of Maquipan. Maquipan "sell[s] a European concept of bakery," selling products such as pastries, bread and baked goods from Europe in the United States. (Doc. 58, Att. 2 at 19, 22-23).

B. Facts

Cusumano was hired as a warehouse supervisor or a branch manager,[1] but the geographic area in which he was to work had not been developed, so he was trained for other tasks, such as baking, displaying and presenting products. (Doc. 63, at 35, 78). Cusumano visited account customers,[2] trained their employees on Maquipan's equipment and products, and demonstrated Maquipan's products to the end consumer. (*Id*. at 36, 40-41, 71, 78). He performed these duties the entire time he worked for Maquipan. (*Id*. at 36). Cusumano also performed additional duties, including: sales calls, including cold calls to develop new business, (*id*.); making deliveries to customers, (*id*. at 37, 71); repairing Maquipan equipment at customer accounts; installing Maquipan equipment for customers; taking physical orders for products from customers, (*id*. at 37-38, 45, 71); and working with customers when they had complaints about Maquipan's products, (*id*. at 74). Cusumano's job required extensive travel in the central Florida area. (*Id*. at 42).

---

[1] Cusumano's title was "hot bread center supervisor." (Doc. 63 at 45).

[2] Cusumano asserts that he was told which locations to visit. (Doc. 63 at 38, 41-42, 44-45). The Defendants' corporate representative, however, states that Cusumano made the decisions as to where to go to try and develop new business. (Doc. 57, Att. 3 at 16).

For a period of six weeks, Cusumano worked at a U-Save supermarket in Tampa, where he would bake products, ensure that the products display was filled, monitor a cooler where products were stored, provide samples of Maquipan products to end consumers, and train and supervise U-Save employees.  (Doc. 63 at 78-79, 82, 85, 88).  Cusumano states that during that time, he worked at the store for approximately 14 or 15 hours per day, six or seven days per week,[3] (*id*. at 85), for an average of between eighty and one hundred sixteen hours per week, (*id*. at 37; Doc. 57, Att. 2 at 27).

Cusumano was not responsible for supervising two or more people on a day-to-day basis.  (Doc. 57, Att. 2 at 30; Att. 3 at 15).  He did not have the authority to hire or fire employees, (Doc. 57, Att. 2 at 31), and he generally operated on his own, (*id*. at 37).  Cusumano states that his time on the job was generally divided up as follows: he spent approximately twenty percent of his time attending to sales duties, (Doc. 57, Att. 2 at 51); eighty percent of his time was spent on manual work, including picking up and delivering Maquipan products, (*id*. at 32); he drove a delivery truck one and one-half to two days each week,[4] (Doc. 63 at 56); and he made repairs to equipment approximately once every three weeks, (*id*. at 62).[5]

---

[3] Sandi Greihwan, a U-Save employee, states that while at the store, Cusumano worked more than forty hours per week.  (Doc. 57, Att. 4 at 2).  She also states, however, that Cusumano did not supervise U-Save employees.  (*Id*.).

[4] The Defendants' corporate representative states that Cusumano only made deliveries one day each week.  (Doc. 57, Att. 3 at 24).

[5] The Defendants' corporate representative states that the majority of Cusumano's time was not spent in training customers and their employees; instead, the majority of his time was spent visiting and assisting customers, and his primary duty was customer service, not technical work or repairs.  (Doc. 57, Att. 3 at 21-22).

There is some dispute over the amount of hours Cusumano worked. He asserts varying amounts of hours, such as: he averaged six work days per week, sometimes seven, (Doc. 63 at 116); he worked between nine and seventeen hours per day, (*id.*); he averaged between seventy and eighty hours per week over the year he worked for Maquipan, (*id.*); he worked between eighty and one hundred sixteen hours per week while working at the U-Save in Tampa, (*id.* at 37; Doc. 57, Att. 2 at 27); he worked approximately one hundred hours per week, at an average of sixteen hours per day, (Doc. 57, Att. 2 at 27); and he averaged sixty hours of overtime per week, (*id.* at 28). The Defendants' corporate representative, however, states that Cusumano worked for eight or nine hours per day, (Doc. 57, Att. 3 at 25-26); mostly worked five days per week, (*id.* at 33-34); and that he sometimes worked six days per week, but would make up for it by taking a day off the following week, (*id.*).

Cusumano received a salary of between $650 and $700 per week, (Doc. 63 at 41), and did not receive extra pay for overtime hours, (Doc. 57, Att. 2 at 29).

C. Claims and Arguments

Cusumano asserts two claims against the Defendants. In Count One, he asserts a violation of Sections 7 and 15 of the FLSA in that he worked many weeks in excess of forty hours per week, yet was not compensated for his excess work at a rate at least one and one-half times his regular pay. In Count Two, under Chapter 448.08 of the Florida Statutes, he asserts that Maquipan wilfully failed to pay him wages or compensation due to him with regard to his employment, which thus constitutes unpaid wages under Chapter 448 of the Florida Statutes.

The Defendants assert four affirmative defenses, including the fourth affirmative defense which is at issue here, in which the Defendants argue that any failure to pay Cusumano overtime

wages was based on a good faith belief that he had been paid in accordance with the FLSA and that the Defendants had reasonable grounds to believe that they were in compliance with the FLSA.[6]

Cusumano now seeks the entry of partial summary judgment on several grounds. First, he seeks summary judgment on the Defendants' fourth affirmative defense, arguing that there is no record evidence supporting the Defendants' assertion of good faith or reasonable belief that they complied with the FLSA. Second, Cusumano asserts that he is entitled to summary judgment as to Count One because he has established a prima facie case that he performed work in excess of forty hours per week for which he was not properly compensated, and because the Defendants have failed to keep appropriate records of his time and thus cannot refute his claims.

## II.     Standard of Review

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929

---

[6] The Defendants' primary defense is that Cusumano was exempt from the overtime pay requirements of the FLSA. The Defendants' Second and Third Affirmative Defenses assert, respectively, that Cusumano was exempt either as an outside salesman or pursuant to the administrative exemption. (Doc. 12 at 3). The Defendants also assert that Cusumano was exempt in both of their Responses to the Motions at issue here. (*See* Doc. 62 at 1, 5; Doc. 64 at 1 ("[E]ven if there is no genuine issue of material fact that Plaintiff worked more than 40 hours per week, this would not be enough to show a violation of the [FLSA] in light of the strong evidence showing that plaintiff (sic) was exempt from the overtime provisions of the FLSA."); *id*. at 4).

F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgement points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).[7]

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).

---

[7] All decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent on courts within the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

**III.     Legal Analysis - Count One**

Cusumano seeks the entry of summary judgment on his claim arising under the FLSA on the grounds that the Defendants are unable to present evidence of the precise amount of work Cusumano performed. In support of his argument, Cusumano cites to the Supreme Court case of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). Cusumano's argument in this regard is not well made.

>The portion of *Anderson* to which Cusumano cites states, in relevant part:
>
>An employee who brings suit under s 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. . . . When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. . . . In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id*. at 687-89. This statement does not mandate the entry of summary judgment upon a finding (or, as here, an allegation) that the employer failed to keep appropriate records. Instead, this statement sets out the employee's burden of proof in those cases where an employer has failed to comply with its statutory duty to maintain proper records. *See Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 471 (11th Cir. 1982). Specifically, this language means that "where an employer has violated its legal duty to keep adequate records, thereby preventing the employees' access to evidence to which they are legally entitled, the Court applies a special set of burdens."

*McLaughlin v. Stineco, Inc.*, 697 F. Supp. 436, 450 (M.D. Fla. 1988); *see also Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1269, 1290 (M.D. Fla. 1999) ("Where . . . a defendant fails to keep accurate records relating to the number of hours that each plaintiff worked, a plaintiff's burden of proving damages is reduced . . . .").

Cusumano's argument fails, however, on a more fundamental basis, because he has not established a violation of the FLSA. "To prove a violation of the FLSA, a plaintiff employee bears the initial burden of proving that he performed work for which he was not properly compensated." *Wales*, 192 F. Supp. 2d at 1290; *see also Anderson*, 328 U.S. at 687-88. Further, where a party moves for summary judgment on an issue for which that party would bear the burden of proof at trial, the moving party must affirmatively show

> the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party.

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal citation and quotation omitted).

Cusumano's argument in this regard rests on the following assertions: first, that "the record evidence is clear that the Plaintiff performed work for which he was improperly compensated[,]" (Doc. 58 at 6); second, Sandi Greiwahn, an employee at a location where Cusumano worked, testified that Cusumano demonstrated how to display Maquipan's products, and baked, sampled and delivered bread, (*id.*); and third, Maquipan's corporate representative testified that Cusumano's primary job duty was customer service and that he would address questions regarding pastry decorations, why certain pastries did not rise, and related issues, (*id.*). The first statement

amounts to nothing more than a legal conclusion, which the Court is not required to accept on summary judgment. *Beal*, 20 F.3d at 458-59. The second two statements do not establish the absence of a material issue of fact, namely, that Cusumano is an employee entitled to overtime compensation under the FLSA; indeed, there is evidence on the record suggesting otherwise, (*see* Doc. 64 at 5-7; *see also* the discussion at n.6, *supra*, noting the Defendants' argument that Cusumano was exempt from the overtime provisions of the FLSA). Moreover, Cusumano has offered no explanation, nor has he cited to any statute or case law, to demonstrate how these facts prove that he is entitled to overtime compensation under the FLSA. Because Cusumano has failed to carry his burden as the moving party, his motion for summary judgment on Count One must be denied. *Fitzpatrick*, 2 F.3d at 1116.

**IV.     Legal Analysis - Fourth Affirmative Defense**

A. Good Faith  - 29 U.S.C. § 259

Title 29 U.S.C. section 259 provides, in relevant part, that:

> no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the [FLSA] . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged.

29 U.S.C. § 259. This good faith defense is an objective test that bars actions for, *inter alia*, violations of the overtime provision of the FLSA, if the employer establishes "that the act or omission complained of was (1) taken in good faith and was (2) in conformity with and (3) in reliance on a written administrative interpretation by a designated agency." *Cole v. Farm Fresh*

*Poultry, Inc.*, 824 F.2d 923, 926 (11th Cir. 1987); *see also Int'l Ass'n of Firefighters, Local 349 v. City of Rome, Ga.*, 682 F. Supp. 522, 532 (N.D. Ga. 1988) ("The showing of objective good faith alone is insufficient: the employer must also show that it acted in actual conformity with and in reliance on written agency interpretation.") (internal citations and quotations omitted). The law is clear that the section 259 good faith defense requires reliance on a written administrative statement, *Nelson v. Ala. Institute for Deaf & Blind*, 896 F. Supp. 1108, 1114 (N.D. Ala. 1995), and for an employer to rely upon an administrative interpretation, that interpretation "must provide a clear answer to the particular situation . . . ." *Cole*, 824 F.2d at 928. "The agency designated to provide interpretations of the FLSA is the Administrator of the Wage and Hour Division of the Department of Labor." *Id.* at 926; *see also* 29 U.S.C. § 259(b)(1). Further, "in the case of the FLSA, the Administrator must provide the written administrative interpretation in order to qualify for relief under section 259." *Cole*, 824 F.2d at 930.

In support of their assertion of the good faith defense, the Defendants point to a letter to the Department of Labor written by the Defendants' counsel regarding, *inter alia*, the exempt status of several of the Defendants' employees, (*see* Doc. 62, Ex. A), and a purported facsimile response from a Wage and Hour Investigator at the Department of Labor which includes a summary of back wages owed to the listed employees (*see id.*, Ex. B). The Defendants then argue that "[t]hese documents indicate that DOL had initially asked that these individuals be paid overtime and changed their determination after receiving the letter," and "[u]nder these circumstances, Defendants have provided information which creates an inference that Plaintiff was exempt and that Defendant Maquipan believed Plaintiff to be exempt from the overtime provisions of the FLSA." (Doc. 62 at 4-5).

These documents are not sufficient to establish a good faith defense under 29 U.S.C. section 259. That section requires reliance upon a written administrative interpretation from the Administrator of the Wage and Hour Division of the Department of Labor, but Defendants' Exhibit B was sent by a Wage and Hour Investigator, not the Administrator. Further, this sort of correspondence does not constitute a written administrative interpretation. *See McLaughlin v. Quan*, 1988 WL 62595 at 3 (D. Colo. June 17, 1988) (written finding by Department of Labor investigator "would not constitute a ruling or interpretation of the Administrator such that any good faith reliance upon it would support a defense under 29 U.S.C. § 259"); *Murphy v. Miller Brewing Co.*, 307 F. Supp. 829, 838 (E.D. Wisc. 1969) (summary of unpaid wages provided by investigator "was not an administrative regulation, order, ruling, approval or interpretation of the Administrator of the Wage and Hour Division of the Department of Labor as required by the statute."); *Spring v. Washington Glass Co.*, 153 F. Supp. 312, 318 (W.D. Pa. 1957) (favorable finding in a letter from an investigation supervisor of the Wage and Hour Division was not "equivalent to a ruling, approval or interpretation authorized by the Administrator"). Because the Defendants have failed to point to a written administrative regulation, order, ruling, approval, or interpretation from the Administrator of the Wage and Hour Division of the Department of Labor to support their asserted good faith defense under 29 U.S.C. section 259, Cusumano is entitled to summary judgment on this issue. *See Herman v. Suwannee Swifty Stores, Inc.*, 19 F. Supp. 2d 1365, 1374 (M.D. Ga. 1998).

B. Good Faith - 29 U.S.C. § 260

Title 29 U.S.C. section 260 provides an employer with a "good faith" defense to a claim for liquidated damages. *See* 29 U.S.C. § 260 ("In any action . . . to recover . . . unpaid overtime

compensation, or liquidated damages, under the [FLSA] . . . if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] . . . the court may, in its sound discretion, award no liquidated damages . . . ."); *see also Foremost Dairies, Inc. v. Ivey*, 204 F.2d 186, 190 (5th Cir. 1953); *LaPorte v. Gen. Elec. Plastics, Bus. Group Burkville, Ala.*, 838 F. Supp. 549, 558 (M.D. Ala. 1993).  Cusumano asserts that he is entitled to summary judgment because the Defendants cannot establish the elements of this defense.

This issue, however, is not ripe for consideration.  The liquidated damages provision of the FLSA provides, in relevant part, that "[a]ny employer *who violates* the provisions of . . . section 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid . . . overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (emphasis supplied).  It is thus clear that "[o]nly a violation of the FLSA results in a right to liquidated damages under the Act." *Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800, 806 (11th Cir. 1991).  The Court has determined that Cusumano is not entitled to summary judgment on Count One, which asserts a violation of the FLSA, and Cusumano has not offered any other evidence, particularly in his motion directly related to the issue of the good faith defense, that the Defendants violated the FLSA.  In the absence of a determination of an FLSA violation, consideration of the issue of liquidated damages, and thus the associated affirmative defense of good faith, is premature.  Therefore the Court will deny Cusumano's motion to the extent it seeks summary judgment on the good faith defense under 29 U.S.C. section 260.


### V.   Conclusion

Cusumano has failed to carry his burden of establishing that he performed work for which he was improperly compensated, and thus his Motion for Summary Judgment on Count One will be denied. Further, because he has not established a violation of the FLSA, his Motion for Summary Judgment on the Defendants' Fourth Affirmative Defense likewise fails to the extent it seeks summary judgment on the good faith defense under 29 U.S.C. section 260. However, Cusumano has shown, and the Defendants have failed to rebut, that the Defendants are not entitled to the good faith defense under 29 U.S.C. section 259, and thus Cusumano is entitled to summary judgment on that issue. Accordingly, it is

**ORDERED THAT** Cusumano's Motion for Summary Judgment on Count One (Doc. 57) is DENIED; and Cusumano's Motion for Summary Judgment on the Defendants' Fourth Affirmative Defense (Doc. 54) is GRANTED to the extent discussed herein.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 1, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party