# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GREG CUSUMANO,**

**Plaintiff,**

-vs-                                                    Case No.  6:04-cv-787-Orl-31KRS

**MAQUIPAN INTERNATIONAL, INC.**
**d/b/a Pan & Plus and ANTONIO**
**CASTANO,**

**Defendants.**

_____

# MEMORANDUM OPINION
# AND ORDER

## I.      Introduction

Plaintiff, Greg Cusumano ("Cusumano" or "Plaintiff"), brings this FLSA claim for

overtime pay against his former employer, Maquipan International, Inc. ("Maquipan").  A bench

trial was held before the undersigned on November 21, 2005.  At the conclusion of Plaintiff's case,

the Court granted a judgment as a matter of law under Fed. R. Civ. P. 50 as to the individual

defendant, Antonio Castaño.

## II.     The Facts

Maquipan is engaged in the business of selling goods, equipment and a process for retailers

to bake gourmet breads and pastries.  In 2001, Maquipan had about a dozen customers in Central

Florida and sought to expand its customer base there.  In furtherance of this goal, Defendant hired

Mr. Santiago Pastori ("Pastori") as its Central Florida manager.  Mr. Pastori in turn recommended to Maquipan's general manager, Jorge Castaño, that Defendant hire Cusumano.

Cusumano was hired effective September 1, 2002 and worked for Defendant until August 31, 2003.  His title was "Hot Bread Center Supervisor."  (Plaintiff's Trial Exhibit 9).[1]  His job was to provide technical support for Defendant's customers, including training on the baking process and product display. (Plaintiff's Trial Exhibits 1 and 21).  Defendant claims, however, that Plaintiff's main function was to promote the product and increase sales by obtaining new customers.  During his one year tenure, Defendant added eight to ten new customers in Central Florida, but Defendant could attribute only one new customer to Plaintiff.

The terms of Mr. Cusumano's employment were discussed at one or more meetings attended by Plaintiff, Pastori and Castaño.  Both parties agree that Plaintiff was to be paid a salary of $715 per week.  Plaintiff claims that it was understood that this would cover a 45-hour week.[2]  Defendant denies that any specific limitation was discussed.

Plaintiff claims that he actually worked an average of 98 hours per week, including Saturdays and, on occasion, Sundays.  According to Plaintiff's calculation, he worked a total of 3,016 hours of uncompensated overtime during his employment at Maquipan.

---

[1] However, Defendant concedes that Plaintiff did not supervise anyone.  (Pastori deposition at  p. 15).  The Plaintiff's title is also referred to as "Sales Rep."  (Plaintiff's Trial Exhibit 7).

[2] Plaintiff arrives at this number based on statements made by Defendant that he would be expected to work approximately ten hours per day, five days per week, with one and a half hours of lunch/break time, and that he would be home by dinner.

The gist of this dispute concerns the nature of Plaintiff's job responsibilities. Plaintiff claims that 80% of his time was spent performing manual labor.[3] This would include training of customer employees (including the actual baking of products on the customer's premises), and deliveries. He also took orders for product, based on the customer's inventory, and attempted to locate new customers. Plaintiff claims he was not successful in making new sales, because Defendant would not give him the necessary product information. Defendant admits that Plaintiff was not successful as a salesman and that his primary job duty was customer service. (Pastori deposition at p. 24). Accordingly, at the end of his first year, Defendant attempted to change Plaintiff's compensation to one based, in part, on commissions. Plaintiff declined and terminated his relationship with Defendant.

The parties dispute the degree to which Plaintiff worked independently. Defendant claims that Plaintiff's schedule was totally within his discretion. (Pastori deposition at p. 16). Conversely, Plaintiff claims that he was substantially directed by Mr. Pastori as to which customers to visit each day and how long he should stay at each customer's location. (Cusumano's January 14, 2005 deposition at 42-45, 54). In any event, both parties agree that they were in frequent communication by cell phone, and occasionally, both would be present at a customer location at the same time. Defendant had no specific knowledge as to how many hours Plaintiff worked each day and Defendant maintained no time records concerning Plaintiff's employment. (Pastori deposition at 18, 28, 35).

---

[3] According to Plaintiff, less than twenty percent of his time was spent in "sales." (Cusumano's January 14, 2005 deposition at 50, 90).

**III.     The Law**

The Fair Labor Standards Act, 29 U.S.C. section 201, *et seq*. ("FLSA"), provides in pertinent part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1) ("Section 207").  The FLSA thus "requires employers to pay one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week." *Prickett v. DeKalb County*, 349 F.3d 1294, 1296 (11th Cir. 2003).[4]  Employers who violate these provisions of the FLSA are liable to the affected employee in the amount of his or her unpaid overtime compensation, as well as an additional equal amount as liquidated damages.  *Id*. (*citing* 29 U.S.C. § 216(b)).

Pertinent exemptions to the overtime pay obligation are set forth in 29 U.S.C. section 213, which provides that the provisions of Section 207, *supra*, shall not apply to "any employee employed in a bona fide . . . administrative . . . capacity . . . or in the capacity of outside salesman . . . ."  29 U.S.C. § 213(a)(1).  The employer carries the burden of proving an exemption,[5] *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004), and in determining whether an exemption exists, the overtime provisions of Section 207 are narrowly construed against the employer.

---

[4] The FLSA is a remedial statute that should be liberally construed. *Prickett*, 349 F.3d at 1296.

[5] The employer must prove the applicability of an exemption by clear and affirmative evidence. *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001).

*Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800, 804 (11th Cir. 1991); *see also Avery v. City of Talladega, Ala.*, 24 F.3d 1337, 1340 (11th Cir. 1994).

A. The Administrative Exemption

An employee employed in a bona fide administrative capacity is one who is: (1) compensated on a salary of at least $455 per week, 29 C.F.R. § 541.200(a)(1); (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers,"[6] 29 C.F.R. § 541.200(a)(2); and (3) "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance," 29 C.F.R. § 541.200(a)(3); *see also Sack v. Miami Helicopter Serv., Inc.*, 986 F. Supp. 1456, 1469 (S.D. Fla. 1997) ("Activities which qualify as administrative are the performance of office or non-manual work directly related to management policies or general business operations of the employer or the employer's customers, which includes work requiring the exercise of discretion and independent judgement.").

---

[6] "The term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id*. "The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." 29 C.F.R. § 541.700(b).

To meet the requirement that an employee perform non-manual work directly related to the management or general business operations of his employer, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a); *see also Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125 (9th Cir. 2002) ("requirement is met if the employee engages in running the business itself or determining its overall course or policies, not just in the day-to-day carrying out of the business' affairs.") (internal citation and quotations omitted); *Wilshin v. Allstate Ins. Co.*, 212 F. Supp. 2d 1360, 1375-76 (M.D. Ga. 2002) (issue is whether plaintiff's primary duty is "directly related" to his employer's management policies or general business operations). This type of work includes, but is not limited to: finance, accounting, budgeting, quality control, purchasing, procurement, advertising, marketing, personnel management, and human resources. 29 C.F.R. § 541.201(b).

"In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). Factors to be considered to determine whether an employee falls within this category include, but are not limited to:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on

significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b). It is not required that an employee's decisions have an air of finality normally associated with ultimate authority, and thus an employee may still exercise independent judgment and discretion even when his decisions are reviewed by a higher authority. 29 C.F.R. § 541.202(c). Further, the regulations do not require that all or most of the employee's work involve discretion and the exercise of independent judgment; instead, the employee's work "need only include use of discretion or independent judgment." *Wilshin*, 212 F. Supp. 2d at 1378.

B. The Outside Sales Exemption

An employee employed in the capacity of an outside salesman is one whose primary duty is: (1) making sales within the meaning of section 3(k) of the FLSA,[7] 29 C.F.R. § 541.500(a)(1)(i); and (2) "[w]ho is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty," 29 C.F.R. § 541.500(a)(2).[8] An outside salesman "is an employee who makes sales at the customer's place of business . . . ." 29 C.F.R. § 541.502. Outside salesmen include certain employees engaged in promotional work, as well as certain drivers who both deliver and sell products.

To qualify for performing promotional work, the promotional work must be performed "incidental to and in conjunction with an employee's own outside sales." 29 C.F.R. § 541.503(a).

---

[7] "'Sale' or 'sell' includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k).

[8] *See* note 6, *supra*.

For example, a manufacturer's representative "may perform various types of promotional activities such as putting up displays and posters, removing damaged or spoiled stock from the merchant's shelves or rearranging the merchandise," and will be considered an outside sales employee "if the employee's *primary duty* is making sales or contracts." 29 C.F.R. § 541.503(b) (emphasis supplied). However, a company representative "who visits chain stores, arranges the merchandise on shelves, replenishes stock by replacing old with new merchandise, sets up displays and consults with the store manager when inventory runs low, but does not obtain a commitment for additional purchases," is not exempt because he "does not consummate the sale nor direct efforts toward the consummation of a sale . . . ." 29 C.F.R. § 541.503(c).

Drivers who deliver products and also sell those products may qualify as exempt outside sales employees only if the employee's primary duty is making sales. 29 C.F.R. § 541.504(a). "In determining the primary duty of drivers who sell, work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including loading, driving or delivering products, shall be regarded as exempt outside sales work." *Id*. Factors to be considered to determine whether the driver's primary duty involves making sales include: comparing the driver's duties to those of other employees engaged as drivers and as salespersons, the presence or absence of customary or contractual arrangements concerning the amount of products to be delivered, the employer's specifications as to qualifications for hiring, sales training, method of payment, and proportion of earnings directly attributable to sales. 29 C.F.R. § 541.504(b). Drivers who may qualify as exempt outside salespersons include:

> (1) A driver who provides the only sales contact between the employer and the customers visited, who calls on customers and takes orders for products, who delivers products from stock in the employee's vehicle or procures and delivers the

product to the customer on a later trip, and who receives compensation commensurate with the volume of products sold[;] (2) A driver who obtains or solicits orders for the employer's products from persons who have authority to commit the customer for purchases[;] (3) A driver who calls on new prospects for customers along the employee's route and attempts to convince them of the desirability of accepting regular delivery of goods[; and] (4) A driver who calls on established customers along the route and persuades regular customers to accept delivery of increased amounts of goods or of new products, even though the initial sale or agreement for delivery was made by someone else.

29 C.F.R. § 541.504(c).

## IV.    Findings of Fact

Based upon the evidence presented, the Court finds that Plaintiff worked for Defendant for a period of 52 weeks at a salary of $715 per week.  Approximately eighty percent of Plaintiff's job requirements were manual in nature.  He did not occupy a supervisory position,[9] and his sales activities were minimal.[10]  Plaintiff worked a total of 3,016 overtime hours for which he was not compensated.  There was no agreement as to the number of hours Plaintiff was expected to work each week.

## V.    Discussion

Plaintiff presented a *prima facie* case for unpaid overtime compensation under the FLSA. Thus, it was Defendants' burden to prove the applicability of one of the stated exemptions.

--------

[9] *See* Cusumano's April 4, 2005 deposition at 38 (he did not supervise two or more people on a daily basis, and he did not have the authority to hire or fire anyone); *see also* Pastori's deposition at 15 (Plaintiff did not supervise anyone); *id*. at 30 (Plaintiff did not hire or fire anyone).

[10] *See* Cusumano's January 14, 2005 deposition at 50 (noting that he spent less than twenty percent of his time selling products and cold-calling); *id*. at 90 (he spent less than twenty percent of his time performing sales presentations).  *See also* Cusumano's April 4, 2005 deposition at 39-40 (stating that the majority (approximately eighty percent) of his work was manual, and that only twenty percent was devoted to sales, because he was called to do different things).

Defendant utterly failed in this regard.  Instead of proving that the Plaintiff was either an administrative employee or an outside salesman, the evidence rather convincingly shows that he performed manual labor and that actually seeking out and making new sales was, at best, a secondary task.

     A. Plaintiff was not employed in a bona fide administrative capacity.[11]

     The Defendant has not shown that the Plaintiff meets either of the "primary duty" requirements.  First, the Plaintiff's primary duty was not office or non-manual work that was directly related to the management or general business operations of the Defendant.  Instead, the Plaintiff spent most of his time (approximately eighty percent) working with customers, baking and demonstrating products, making deliveries, and repairing and installing equipment.[12]  The Plaintiff therefore spent most of his time engaged in manual work.  Thus, the Plaintiff spent, at most, twenty percent of his time actually performing "sales" work, and the Defendant has not provided sufficient evidence to demonstrate that the Plaintiff's "sales" activities were directly related to the Defendant's management or general business operations.

     Second, the Plaintiff's primary duties did not include the exercise of discretion or independent judgment regarding significant matters.  The Plaintiff received instructions on which customers to call, which locations he should visit, what tasks to perform, and how much time to

---

[11] Plaintiff clearly meets the salary requirement, and thus the Court only addresses the "primary duty" requirements.

[12] *See* Cusumano's January 14, 2005 deposition at 36-38, 43-45, 50, 54, 73-74; *see also* Cusumano's April 4, 2005 deposition at 40; Defendant's Trial Exhibit 1 (defines specific duties of Hot Bread Center Supervisor as: checking the quality and presentation of products, ensuring proper storage of products, supporting customers when having specials and when new products are being sold and produced, and detecting major problems and reporting them to the office).

spend at certain locations.[13]  He also did not have sufficient information to actually close sales,

which were finalized by the Plaintiff's supervisor.[14]  Indeed, the Plaintiff was only authorized to

provide a customer with "average prices."  The Plaintiff did not supervise two or more people on a

daily basis, and did not have the authority to hire or fire anyone.  Moreover, there is no evidence

that the Plaintiff, *inter alia*: had the ability to formulate and implement managerial policies or

operating procedures; had the ability to commit the Defendant in matters with a significant

financial impact; was able to deviate from policies and procedures without approval; was involved

in long term planning; or performed work having a significant impact on the Defendant's business.

The Defendant therefore failed to carry its burden of demonstrating that the Plaintiff's job

satisfies the requirements for being exempt as a bona fide administrative employee.  *See Martin v.*

*Ind. Mich. Power Co.*, 381 F.3d 574, 582-83 (6th Cir. 2004) (employee was not exempt as

administrative employee where primary job did not relate to employer's administrative operations,

in that he did not advise management, plan, negotiate, represent the business, make purchases,

---

[13] *See* Cusumano's January 14, 2005 deposition at 42-45 (supervisor would tell Plaintiff which locations to visit); *id*. at 47 (received instructions on how many hours to be at a particular location and what time to arrive); *id*. at 54 (received a list of customers to call); *id*. at 72 (told where to be, when to be there and what to sell); *id*. at 74 (told how to work with customer); *id*. at 80 (same); *id*. at 82 (told to return to certain customers); *id*. at 98 (given specific times to be at certain locations); *see also* Cusumano's April 4, 2005 deposition at 9 (told to go to certain locations); *id*. at 22-23 (same); *id*. at 31 (given directions as to what to do on any given day).  Pastori, however states that it was up to the Plaintiff to decide which stores to visit.  (*See* Pastori deposition at 16).  The Court finds the Plaintiff's testimony more persuasive in this regard and, in any event, a single statement by the Defendant that the Plaintiff decided which stores to visit does not meet the Defendant's burden of showing that the Plaintiff's primary duty required the exercise of discretion and independent judgment.

[14] *See* Cusumano's January 14, 2005 deposition at 52 (only gave customers an average price, and was not allowed to close the sale); *id*. at 89 (never completed a sale); *id*. at 95-96 (supervisor closed the sale).

promote sales, or engage in research or control; employee did not perform work of substantial importance, in that he did not make significant input into decisions affecting company); *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1081-82 (8th Cir. 2000) (employee with title of "site manager" was not exempt as administrative employee where her duties included collecting applications, verifying references, contacting potential applicants, preparing reports, verifying payments and writing receipts, performing minor repairs, cleaning, and forwarding invoices for payment; duties did not require exercise of discretion or independent judgment).[15]

B. Plaintiff was not an outside salesman.

It has already been established that the Plaintiff spent, at most, approximately twenty percent of his time in sales-related activities, and thus his primary duty was not "making sales." The Plaintiff did, on occasion, attempt to have a customer increase an order, and did take orders from customers.[16]  However, the Plaintiff was not allowed to actually complete or close sales, a

---

[15] *Compare Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 627 (11th Cir. 2004) (plaintiffs were exempt as administrative employees where they spent majority of time servicing customers, and duties, which were of substantial importance to employer, included promoting sales, advising customers, adapting policies to customer's needs, deciding on advertising budget and techniques, hiring and training staff, determining staff's pay, and delegating routine matters and sales to said staff; and given nature of duties, plaintiffs exercised discretion); *Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 267 (5th Cir. 2000) (employee worked in bona fide administrative capacity where work was primarily intellectual and involved little or no manual labor or mechanical work); *Reyes v. Hollywood Woodwork, Inc.*, 360 F. Supp. 2d 1288, 1292-93 (S.D. Fla. 2005) (employee was exempt as administrative employee where he prepared bids that were important part of employer's general business operations and necessary for employer to obtain production work and sell products, and employee used discretion and judgment in pricing portions of bids).

[16] *See* Cusumano's January 14, 2005 deposition at 50 (had to get orders for products from existing customers instead of doing cold calls with new customers); *id.* at 82 (was told to return to customers to attempt to get the customer to increase their order).

task performed instead by his supervisor.[17]   At best, the Plaintiff established two or three clients. (*See* Pastori's deposition at 21).

Indeed, the Defendant admitted that the majority of the Plaintiff's time was spent visiting and assisting customers, that his primary duty was customer service, and that he worked with customers on things concerning the product, such as decorations on pastries and why certain pastries did not rise.  (*See* Pastori's deposition at 21-22).  Rather than working to produce new sales, the Plaintiff's duties were focused on providing the customers with product and assisting them with selling that product in their stores.  The Plaintiff received a straight salary, and his compensation did not change based on the amount of product customers purchased.  (*See* Cusumano's January 14, 2005 deposition at 42).  Finally, it does not appear that the Plaintiff's primary customer service duties were directed at consummating new or additional sales.

Thus, the Defendant failed to prove that the Plaintiff qualifies as an outside salesman for the purposes of exemption from the overtime requirements of the FLSA.  *See Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 416 (5th Cir. 1975)[18] (where employee's activity consisted of delivering products to predetermined customers in predetermined amounts not significantly affected by solicitations of the employee, that employee was not exempt as an outside salesman); *Wirtz v. Keystone Readers Serv., Inc.*, 418 F.2d 249, 260-61 (5th Cir. 1969) (where employees'

---

[17] *See* Cusumano's January 14, 2005 deposition at 89:

Question: You don't remember how many new accounts you were responsible for opening while you worked at Pan & Plus?
Answer: No. Because I never got to complete the sale.

[18]  All decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent on courts within the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

orders were replaced by final contract secured by manager, and employees' promotional work merely paved the way for others to make sales, employees were not exempt as outside salesmen).[19]

## VI.    Damages

Since Plaintiff was hired at a fixed salary for an unspecified work week, damages are computed using the "fluctuating work week" method of overtime payment.  29 C.F.R. § 778.114; *Blackmon v. Brookshire Grocery Co.,* 835 F. 2d 1135 (5th Cir. 1988).  Under this method, the hours worked (98) are divided into the fixed salary ($715) in order to determine the regular rate of pay ($7.30 per hour).  The overtime payment is then computed by multiplying the overtime hours (3,016) by one half the regular rate ($3.65), resulting in damages of $11,008.40.  In addition, Defendant is liable for liquidated damages in the same amount[20] for a total damage award of $22,016.80.

## VII.    Conclusion

The Plaintiff has established that he is entitled to overtime under the FLSA, and the Defendant has failed to show that the Plaintiff is exempt.  Accordingly, it is

---

[19] *Compare Hodgson v. Krispy Kreme Doughnut Co.*, 346 F. Supp. 1102, 1105-1106 (M.D.N.C. 1972) (salesmen were exempt as outside salesmen where they: were responsible for obtaining new customers, including special businesses and chain customers, keeping and serving old customers, developing additional sales to established customers; determined time to be devoted to sales route; were responsible for results; were compensated solely or in large part on percentage commission on net sales; promoted steps to increase sales to customers; and were expected to produce annual growth rate in number of customers and volume of sales).

[20] 29 U.S.C. section 216(b).

**ORDERED THAT** judgment be entered for the Plaintiff, Greg Cusumano, and against the

Defendant Maquipan International, Inc., in the amount of $22,016.80.  The Court will retain

jurisdiction to determine the appropriate attorney's fee and cost award.

**DONE and ORDERED** in Chambers, Orlando, Florida on November 30, 2005.


GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party